FILED ___ ENTERED
___ LODGED ___ RECEIVED

FEB 25 2000

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
                              DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EMILIA PORTILLO | : | |
| | : | |
| v. | : | Civil Action WMN-98-794 |
| | : | |
| NORDSTROM, INC. | : | |

### MEMORANDUM

Before the Court are Defendant Nordstrom Inc.'s Motion for Summary Judgment (Paper No. 39) and Defendant Silva's Motion for Partial Summary Judgment (Paper No. 41). The motions are ripe for decision. Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motions will be granted.

I.   BACKGROUND

This sex discrimination action arises from Plaintiff's employment in the housekeeping department of Nordstrom's Annapolis, Maryland store. Plaintiff alleges that her direct supervisor, Defendant Jorge Silva, sexually harassed her by way of "sexually explicit statements, propositions, physical touching and assaults all of which were unwanted and unwelcomed and all of which created an abusive, hostile and offensive working environment." Complaint at ¶ 15.

Plaintiff claims that shortly after Silva became the manager of the housekeeping department in 1995, he began a "campaign of sexually harassing" her which included such conduct as grabbing

1



her legs, breasts, and buttocks, massaging her neck and shoulders, blowing kisses at her, making lewd comments about her sexual relationship with her husband, and bragging about his own sexual encounters. Plaintiff's Opposition at 3. Plaintiff did not report this harassment to Nordstrom's Human Resources Department or any other managerial employee, although she did mention it to her co-worker, Leon Smith and her husband, Juan Santos Portillo.

Human Resources was not aware of Plaintiff's complaints until August 1996. On August 8, 1996, Silva met with Plaintiff to inform her that her scheduled hours were going to be reduced due to poor attendance. In 1995 and 1996, Plaintiff had attendance problems due to difficulties in arranging for a baby-sitter for her children.[1] During the August 8, 1996, meeting, Silva provided Plaintiff with a written counseling report and told her he was going to reduce her hours. Plaintiff alleges that Silva became angry with her, ordered her to leave the store, and slammed his fist on a table. She left the office and fainted. She was taken to the hospital where she reported her allegations of sexual harassment to hospital personnel and an

---

[1] For example, in July 1996, Plaintiff requested and was granted five days off. In addition, Plaintiff was scheduled to work on July 31, 1996, the same say as an important "white glove" inspection of store facilities by corporate officials. Shortly before Plaintiff's shift was to begin, her husband called on her behalf to say she would not be coming in.

Anne Arundel County Police Officer. Plaintiff filed a criminal complaint against Silva.

On August 9, 1996, the police officer notified Nordstrom of the allegations raised by Plaintiff. Nordstrom investigated the issue on August 10, 1996, when Plaintiff returned to work. Marcia Warmington, the Human Resources Manager, met with Plaintiff to discuss the specifics of her allegations. Warmington next met with Silva concerning the allegations; all of which he denied. Warmington interviewed Tanya Tougba, the only other housekeeping employee that worked the day shift with Plaintiff. Tougba did not corroborate Plaintiff's allegations. Warmington met with store manager, Bruce Embee, and concluded that there was no evidence to support Plaintiff's sexual harassment claim. Nordstrom offered Plaintiff the opportunity, nonetheless, to transfer to the store's café at the same rate of pay and under the supervision of someone other than Silva. Plaintiff accepted the transfer. Silva was not transferred or demoted but he was counseled both orally and in writing.

Plaintiff claims that when she worked in the café, Silva came in on several occasions and "ridiculed" her. Plaintiff's Opposition at 9. Plaintiff did not inform Nordstrom of these incidents. Plaintiff resigned in November 1996. She maintains that it was due to Silva's sexual harassment. Defendants claim that Plaintiff informed Warmington on November 26, 1996, that she

was resigning and moving to North Carolina because her husband was threatening her.

In March 1998, Plaintiff filed a complaint in this Court against Defendants Nordstrom and Silva. In Count I, Plaintiff sought damages from both Defendants for a violation of Title VII for sexual harassment. She also brought state law claims: Count II sought damages from Nordstrom for negligent hiring and/or retention, Count III claimed damages from both Defendants for intentional infliction of emotional distress, Count IV claimed damages from both Defendants for loss of consortium,[2] and Count V sought relief from Silva for battery.

## II. ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When considering the motion,

---

[2] Count IV was dismissed, with consent of all parties, in 1998.

4

the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252. If the movant demonstrates there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that the triable issue of fact exists for trial. <u>Celotex</u>, 477 U.S. at 324.

Defendants argue that Plaintiff's Title VII claim is untimely. The two jurisdictional prerequisites to a Title VII action are (1) filing timely charges of employment discrimination with the EEOC; and (2) receiving and timely acting upon the EEOC's notice of the right to sue. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 798 (1973). In Maryland, a charging party must file an EEOC charge within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).[3] If a charging party fails to comply with this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not be subsequently challenged in a Title VII suit. <u>Beall v. Abbott</u>

---

[3] Despite Defendants' arguments to the contrary, the Court will assume for the purposes of this Memorandum Opinion, that the 300 day filing period applies, rather than the 180 day limit.

5

Lab., 130 F.3d 614, 620-21 (4th Cir. 1997).

An exception to the 2000e-5(e)(1) timely filing requirement, upon which Plaintiff relies, is the continuing violation theory. A continuing violation may consist of either a series of related acts, Beall, 130 F.3d at 620-21, or the maintenance of a discriminatory policy or system. See Lindemann, B. & Grossman, P., Employment Discrimination Law 1361 (3d ed. 1996). The theory is intended to be construed narrowly, Talbot v. Mobil Corp., 46 F.Supp.2d 468, 472 (E.D. Va. 1999), and is available only if an actual violation of the plaintiff's rights has occurred within the required limitations period. Beall, 130 F.3d at 620-21.

Plaintiff did not file an EEOC charge of discrimination until April 16, 1997. Therefore, the 300 day time period extends to events going back to June 20, 1996. According to Plaintiff's own deposition, Silva's alleged inappropriate remarks and touching occurred some time before November 1995:

> Q. Your notes that are marked as Exhibit 13 were written sometime before November 1995; isn't that right?
> A. [Plaintiff] Yes.
> Q. And all of the incidents that you are complaining about relating to Mr. Silva and what he said and did occurred before you wrote those notes, right?
> A. Yes.

Defendant Nordstrom's Motion, Exh. 7F at 354-355.

Plaintiff argues that she made a mistake during the deposition. She asserts that "the EEOC charges filed by

Plaintiff, her Answers to Interrogatories, her deposition testimony, and the uncontested employment records make it abundantly clear that Silva's sexual harassment of Plaintiff continued until she was forced to resign in November 1996." Plaintiff's Opposition at 26 n.6.  Plaintiff's attempt to contradict her deposition testimony cannot succeed for two reasons.  First, it is not "abundantly clear" when these alleged events took place.  Plaintiff has not attached her EEOC charges or her employment records.  She has not submitted so much as an affidavit.  The remaining documents, her deposition testimony and answers to interrogatories, do not list any specific acts of sexual harassment within the time period.  The only incidents alleged in these documents which occurred after June 20, 1996, are when Silva slammed his fist and when he came to the café and laughed at Plaintiff, which are discussed below.  The second reason that Plaintiff can not now contradict her deposition testimony is that a genuine issue of fact cannot be created merely by contradicting one's own testimony.  Barwick v. Celtoex Corp., 736 F.2d 946 (4th Cir. 1984).[4]

The Court's inquiry turns to whether an actual violation of Plaintiff's rights occurred within the limitations period so that Plaintiff may possibly invoke the continuing violation theory.

---

[4] In addition, Plaintiff was given the opportunity to review her transcripts and make any corrections that she deemed necessary.  She did not make any corrections.

Plaintiff does not demonstrate that either the fist-slamming incident or the ridicule incidents are in any way based on her sex. She has not disputed that the meeting, during which the fist-slamming occurred, was for the purpose of addressing her poor attendance. As for her allegations that Silva came by the café to laugh at her, even if she had demonstrated that these incidents were based on her sex, they are not sufficiently severe or pervasive to create an abusive working environment for purposes of a Title VII claim. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (simple teasing, offhand comments, and isolated incidents are not sufficient to establish a claim of sexual harassment).

In sum, Plaintiff waited 532 days from the last sexually harassing act by Silva to file a charge of discrimination with the EEOC, clearly outside the 300 day time limit. She has not put forth any evidence to establish that any acts of sexual harassment occurred within the applicable time period to rescue her otherwise untimely Title VII claim. Although Silva's conduct before November 1995, as alleged, is both tasteless and vulgar, Plaintiff's Title VII claim is untimely and the Court does not have jurisdiction to consider its merits.

Jurisdiction in the instant case is premised on federal question jurisdiction pursuant to 28 U.S.C. § 1331, 1337, and 1343. With respect to Plaintiff's state law claims, the law

states that in any civil action over which a court has original jurisdiction, the court shall also have

> supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). That same section also provides, however, that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> * * *
> (3) the district court has dismissed all claims over which it has original jurisdiction, []
> * * *

28 U.S.C. § 1367(c).

Having held that Plaintiff has not asserted a timely claim under Title VII, the Court, in its discretion, will dismiss Plaintiff's remaining state law claims.

9

## III. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment will be granted in that judgment will be entered for Defendants on Plaintiff's Title VII claim and the remaining state law claims will be dismissed, without prejudice. A separate order will issue.

_____
William M. Nickerson
United States District Judge

Dated: February 25, 2000.